UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATED MORTGAGE BANKERS, INC., | **)** **)** **)** **)** | |
| *Plaintiff,* | **)** **)** | Case No. 20-1601 (CJN) |
| v. | **)** **)** | |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | **)** **)** **)** | |
| *Defendants.* | **)** **)** **)** | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................... iii

Introduction .................................................................................................................. 1

Background ................................................................................................................... 2

   I.   The FOIA Requests and HUD's Response ........................................................ 2

   II.   Litigation History ............................................................................................ 3

Argument ...................................................................................................................... 4

   I.   AMB Does Not Establish Entitlement to Judgment In Its Favor ........................ 4

   II.   The Court Cannot Order HUD to Post Opinions and Orders to Its Reading Room ........ 5

   III.   Plaintiff Is Not Entitled To Fees ...................................................................... 8

      A.   Plaintiff Has Not Met Its Burden Of Demonstration That It Is Entitled To Fees Under Any Circumstances ........................................................................................... 8

      B.   Plaintiff Is Not Entitled To Interim Fees ................................................. 15

Conclusion ................................................................................................................. 17

# TABLE OF AUTHORITIES

*Allen v. FBI*,
    716 F. Supp. 667 (D.D.C. 1989) ...................................................................... 15, 16

*Biberman v. FBI*,
    496 F. Supp. 263 (S.D.N.Y. 1980) ......................................................................... 15

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
    711 F.3d 180 (D.C. Cir. 2013) ................................................................................. 5

*Citizens for Responsibility & Ethics in Washington v. U.S. DOJ*,
    846 F.3d 1235 (D.C. Cir. 2017) ...................................................................... 5, 6, 7

*Cotton v. Heyman*,
    63 F.3d 1115 (D.C. Cir. 1995) ................................................................................. 8

*Cox v. U.S. Dep't of Justice*,
    601 F.2d 1 (D.C. Cir. 1979) .......................................................................... 9, 10, 12

*Davy v. C.I.A.*,
    456 F.3d 162 (D.C. Cir. 2006) ........................................................................ 13, 14

*Davy v. CIA*,
    550 F.3d 1155 (D.C. Cir. 2008) ............................................................................. 13

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*,
    895 F.3d 770–79 (D.C. Cir. 2018) ....................................................................... 7-8

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*,
    88 F.3d 1191 (D.C. Cir. 1996) ............................................................................ 5, 7

*Landmark Legal Found. v. EPA*,
    272 F. Supp. 2d 59 (D.D.C. 2003) ........................................................................... 5

*McKinley v. Fed. Hous. Fin. Agency*,
    739 F.3d 707 (D.C. Cir. 2014) ................................................................................. 8

*Nationwide Bldg. Maint., Inc. v. Sampson*,
    559 F.2d 704 (D.C. Cir. 1977) ................................................................................. 9

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ................................................................................................. 8

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ........................................................................................ 7

*Pub. Citizen Health Research Grp. v. Young*,
    909 F.2d 546 (D.C. Cir. 1990) ................................................................................... 8-9

*Pub. Law Educ. Inst. v. U.S. Dep't of Justice*
    744 F.2d 181 (D.C. Cir. 1984) ........................................................................................ 9

*Pyramid Lake Paiute Tribe of Indians v. U.S. DOJ*,
    750 F.2d 117 (D.C. Cir. 1984) ................................................................................ 9-10

*Smallwood v. United States DOJ*,
    266 F. Supp. 3d 217 (D.D.C. 2017) ........................................................... 12-13, 13

*Sweatt v. U.S. Navy*,
    683 F.2d 420 (D.C. Cir. 1982) ..................................................................................... 10

*Union of Concerned Scientists v. U.S. Nuclear Reg. Comm'n*,
    824 F.2d 1219 (D.C. Cir. 1987) ................................................................................... 10

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) .................................................................................................... 4

*Weisberg v. U.S. Dep't of Justice*,
    745 F.2d 1476 (D.C. Cir. 1984) ............................................................................. 9, 10

*Weisberg v. U.S. Dep't of Justice*,
    848 F.2d 1265 (D.C. Cir. 1988) ........................................................................... 10, 11

Defendant, U.S. Department of Housing and Urban Development ("Defendant" or "HUD"), respectfully submits this opposition to the Motion for Summary Judgment filed by Plaintiff Associated Mortgage Bankers, Inc. ("Plaintiff" or "AMB") (ECF No. 29. "Plaintiff's Motion").[1] Plaintiff's Motion states "that there is no genuine dispute as to any material fact and Plaintiff is entitled to judgment in its favor as to Counts II, IV, and V of the Amended Complaint [ECF NO. 13]."[2] This case arises under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA").[3]

## INTRODUCTION

Plaintiff AMB's First Amended Complaint brought five FOIA claims against HUD. Since then, AMB has voluntarily dismissed Counts I and II. ECF No. 13 ("FAC"). HUD has been producing records in response to AMB's FOIA request at issue in Count IV on a rolling basis, but the production is not yet complete due to a delay in producing older hard-copy records because of the COVID-19 pandemic. Counts III and V remain for decision per the Court's December 22,

---

[1]    In support of its Motion, Plaintiff submitted a Memorandum of Law (ECF No. 29-1, "Plaintiff's Brief") and Statement of Undisputed Facts (ECF No. 29-2, "Plaintiff's Fact Statement").

[2]    On September 20, 2020, plaintiff voluntarily dismissed Counts 1 and 2 of the FAC, regarding two FOIA requests for records on the appointment of HUD administrative judges and administrative law judges. ECF No. 15. As a result, Plaintiff has already ceded the right to move for judgment as to Count II.

[3]    On March 1, 2022, Defendant also filed a Motion for Partial Summary Judgment and Judgment on the Pleadings (ECF No. 28, "Defendant's Motion"), Memorandum of Law in support thereof (ECF No. 28-1, "Defendant's Opening Brief"), Statement of Material Facts Not in Genuine Dispute (ECF No. 28-2, "Defendant's Fact Statement" or "Def's SMF"), and Declarations of Deborah R. Snowden (ECF No. 28-3, "Snowden Decl."), Matthew C. Forman (ECF No. 28-6, "Forman Decl."), Cinthia Matos (ECF No. 28-7, "First Matos Decl."), Mark G. Borum (ECF No. 28-9, "Borum Decl."), Mark D. Lansing (ECF No. 28-10, "Lansing Decl."), and Lindsey Allen (ECF No. 28-8, "Allen Decl."), all of which Defendant incorporates herein by reference. Defendant also files herewith its response to Plaintiff's Fact Statement and a supplement to Defendant's Fact Statement, both of which are incorporated herein by reference.

2021 order for summary judgment briefing on issues not related to production. With respect to those counts, the only issues are (1) whether AMB has standing to assert Counts III and V; (2) whether Count V states a colorable claim; and (3) whether the Court can order HUD to post its opinions and orders in its electronic reading room. AMB's motion for summary judgment does not address the first issue, except to erroneously assert in passing that HUD dropped its standing challenge.[4] Nor does Plaintiff address the prerequisites for Count V. Accordingly, on the first two issues, HUD refers the Court to its Motion and Opening Brief. On the third issue, AMB's Motion must be denied because D.C. Circuit precedent is clear: the Court cannot order HUD to publish its opinions and orders in its electronic reading room. Additionally, although it is premature for the Court to rule on AMB's prospective petition for attorney's fees, AMB has not substantially prevailed under FOIA or shown that it would be entitled to fees. The Court should thus deny AMB's Motion and grant HUD's Motion.

## **BACKGROUND**

### I.    **The FOIA Requests and HUD's Response**

This case concerns four FOIA requests:

(1) Request No. 19-FI-HQ-1565, submitted by Brian Serafin on July 16, 2019. It sought records concerning how HUD's ALJs and AJs are appointed from January 1, 2018, to July 16, 2019.

---

[4]    AMB states, "HUD's initial reaction to this lawsuit was . . . to seek dismissal of AMB's lawsuit for lack of standing. After AMB clarified its original request to HUD, and submitted a new request, HUD dropped its standing challenge and filed its Answer to the [FAC]." Pl's Br. at 3 (citations omitted). In fact, HUD's Answer to the FAC preserved its challenge to AMB's standing in the Fifth Defense, which provides:

The Court lacks subject matter jurisdiction over Plaintiff's request . . . 2) with respect to any claims relating to FOIA requests not filed by or on behalf of Plaintiff AMB, and 3) to the extent that Plaintiff fails to sufficiently allege injury-in-fact with respect to its reading room claim under 5 U.S.C. § 552(a)(2)(A).

ECF No. 16 at 2.

(2) Request No. 20-FI-HQ-926, submitted by Brian Serafin on July 16, 2020. This request asked for all of HUD's orders and opinions from January 1, 2010, to March 4, 2020.

(3) Request No. 20-FI-HQ-1554, submitted by Brian Serafin on behalf of AMB on July 7, 2020. This request was identical to Request No. 19-FI-HQ-1565, but the date range was greatly expanded to January 1, 2010, to July 16, 2020.

(4) Request No. 20-FI-HQ-1555, submitted by Brian Serafin on behalf of AMB on July 16, 2020. This request was identical to Request No. 20-FI-HQ-926, with an updated end date of July 16, 2020.

All four requests served as the basis for four of the five counts in AMB's FAC. *See* FAC ¶¶ 38–71. Since then, however, AMB has voluntarily dismissed Counts I and II, corresponding to the first and third FOIA requests. *See id.* ¶¶ 39, 48. Count III corresponds to the second request, and Count IV to the fourth. *See id.* ¶¶ 57, 65. Count V does not correspond to a specific FOIA request, but rather claims that HUD has failed to publish its opinions and orders in its electronic reading room.

Even before AMB brought this suit, HUD was working to fulfill the second and fourth FOIA requests, which asked for a decade's worth of opinions and orders. Second Declaration of Cinthia Matos ("Second Matos Decl.") ¶ 4 (filed herewith). The sheer volume of records to review meant that it would take HUD time to complete the requests. *Id.* ¶¶ 5–6. And these difficulties were compounded by the COVID-19 pandemic, which forced HUD to shift to remote work and has left HUD employees unable to review documents stored only in hard copy. *Id.* ¶ 4. Regardless, HUD began responding to the FOIA requests at issue here soon after receiving them, and it has worked diligently to fulfill them. *See id.* ¶¶ 4–8.

## II.    Litigation History

AMB sued HUD on June 17, 2020. ECF No. 1.  AMB filed its FAC on August 19, 2020 (ECF No. 13), and on September 2 voluntarily dismissed Counts I and II (ECF No. 15).  HUD also filed its answer on September 2.   ECF No. 16.  From that point, HUD continued its work to respond to AMB's FOIA Request No. 20-FI-HQ-1555 (Count IV), and the parties filed joint status

reports updating the Court on the progress of HUD's rolling production (*see* ECF Nos. 17–27).  In December 2021, the Court ordered the parties to file summary judgment briefs only on issues related to liability and prospective relief.  As a result, on March 1, 2022, AMB and HUD filed their Motions. ECF Nos. 28–29.

## ARGUMENT

### I.    AMB Does Not Establish Entitlement to Judgment In Its Favor

AMB's Motion argues that it is entitled to judgment because HUD violated 5 U.S.C. § 552(a)(2) by not posting all final opinions and orders online, and by not immediately producing ten years of final opinions and orders to AMB. Pl's Br. at 4; *see also* ECF 17 ¶ 7(a)(i)-(ii) (describing hundreds of opinions and orders already posted online).  Such allegations are insufficient to show that Plaintiff is entitled to judgment. As explained in HUD's Opening Brief, AMB lacks standing to bring Counts III and V, which relate to production and posting of final opinions and orders. AMB is thus not entitled to a judgment on those counts, and they are also moot. *See* Def's Open. Br. at 5–6, 8–9, 10 n.6.

AMB asserts in passing that HUD "dropped its standing challenge," but that is not correct. First, HUD has preserved its standing challenge as the Fifth Defense in its Answer to the FAC. *See* ECF 16 at 2; *supra* note 1. Second, as "a jurisdictional requirement, standing to litigate cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); Fed. R. Civ. P. 12(h)(3). And third, AMB does not show how Counts III and V are not duplicative of Count IV, and thus moot as distinct claims. *See* Def's Open. Br. at 9–10 & n.6.

In addition, AMB's argument provides no legal or factual support for meeting the prerequisites to bring Count V. *See generally*, Pl's Br. As explained in HUD's motion, AMB cannot state a claim for relief because it did not exhaust administrative remedies by first asking HUD to post all final opinions and orders online. *See* Def's Open. Br. at 7–8.

The remaining claim of AMB's FAC is Count IV, which AMB does not specifically identify in its argument. Under Count IV, AMB alleged that it filed FOIA Request No. 20-FI-HQ-1555, seeking all final opinions and orders, and that HUD did not produce all the requested records within 20 days according to 5 U.S.C. § 552(a)(6). FAC ¶¶ 65, 70–71. That request, however, sought production of all final opinions and orders over a ten-year period. *See* ECF 13-6 at 4. However, in FOIA cases, a plaintiff is not entitled to judgment simply because the agency needed more than 20 days to produce the requested records. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 68 (D.D.C. 2003) ("[A] lack of timeliness of compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester."). Accordingly, AMB's motion for summary judgment on compliance with § 552(a)(2)—whether based on Count III, IV, or V—does not establish a right to judgment in its favor.

## II.    The Court Cannot Order HUD to Post Opinions and Orders to Its Reading Room

Precedent establishes that the Court cannot order HUD to post its opinions and orders to its electronic reading room. It is "clear that a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision." *Citizens for Responsibility & Ethics in Washington v. U.S. DOJ*, 846 F.3d 1235, 1243 (D.C. Cir. 2017) ("*CREW*") (quoting 5 U.S.C. § 552(a)(2)). "Section 552(a)(4)(B) authorizes district courts to order the 'production' of agency documents, not 'publication.'" *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996). Otherwise, such an order "would reach beyond section 552(a)(4)(B)'s focus on 'relieving the

injury suffered by the individual complainant' to remedy an injury suffered by 'the general public.'" *CREW*, 846 F.3d at 1243. The Court can thus order only that HUD provide AMB itself the documents covered by the reading-room provision. *Id.*

AMB attempts to distinguish *CREW*, but its argument is unconvincing. AMB contends that, in *CREW*, the plaintiff sought to have materials posted to the electronic reading room to make the documents available to the general public.  Pl's Br. at 8–9.  By contrast, AMB seeks to have the materials posted to vindicate its own right of access. *Id.*  Yet AMB also asserts that HUD's conduct harmed AMB "as well as every other individual and entity that participated in adjudicatory matters before the Agency and the public at large who were uninformed as to what the Agency's [AJs and ALJs] were up to for all these years." *Id.* at 1. As in *CREW*, AMB seeks to have the requested documents posted to HUD's electronic reading room to make them available to the general public. Following *CREW*, then, the Court should deny AMB an injunction ordering that HUD post its opinions and orders to the electronic reading room.

Finally, AMB argues that the Court can order HUD to publish its opinions and orders in its electronic reading room, instead of producing them directly to AMB, because publication would simply be a different "format" of production. Pl's Br. at 8–9. But AMB's attempt to conflate the "form or format of production" with a right to have the Court order "publication" does not withstand scrutiny. To be sure, FOIA permits a requester to seek a desired form or format for production of a record (if the record is readily reproducible in that format), 5 U.S.C. § 552(a)(3)(B).[5] However, the holdings in *CREW* and *Kennecott* foreclose this argument. While HUD can upload opinions and orders to its reading room (and is doing so), the Court cannot order

---

[5]    None of the FOIA requests at issue in this case requested a particular form or format for production. *See* ECF 13-1, 13-3, 13-4, 13-6.  So, in any event, AMB could not now seek enforcement of a production format it never requested.

that relief. *CREW* held that a plaintiff "may, in a FOIA suit to enforce section 552(a)(2), seek an injunction that would (1) apply prospectively, and would (2) impose an affirmative obligation to disclose upon [the agency], but that would (3) require disclosure of documents and indies *only to [the plaintiff], not disclosure to the public*." *CREW,* 846 F.3d at 1244 (emphasis added). The court based this conclusion on *Kennecott*, which analyzed FOIA's text and held that, under FOIA, there is a difference between "production" to the plaintiff and "publication" to the public. *Kennecott*, 88 F.3d at 1202–03 (concluding that "§ 552(a)(4)(B) does not authorize federal courts to order publication"). D.C. Circuit precedent thus bars the Court from ordering that HUD "produce" its opinions and orders to its public electronic reading room.

AMB contends that several key cases support its position, Pl's Br. at 7–8, but none does. First is *CREW*. True, *CREW* did say that courts in FOIA cases can issue a "prospective injunction with a duty to disclose." *CREW*, 846 F.3d at 1242. However, the D.C. Circuit explained immediately after that, "[a]lthough broad, courts' remedial authority under section 552(a)(4)(B) is not boundless." *Id.* One limit is that "section 552(a)(4)(B) 'does not authorize district courts to order publication' of documents." *Id.* at 1243 (quoting *Kennecott*, 88 F.3d at 1202). While *CREW* acknowledged that courts can order some injunctive relief under FOIA, it cannot order that agencies publish responsive documents for public inspection. *Id.* at 1235.

AMB likewise misconstrues *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). AMB notes that, in *Payne*, the court said that "FOIA imposes no limits on courts' equitable powers in enforcing its terms." Pl's Br. at 7 (quoting *Payne*, 837 F.2d at 494). But that case was limited to claims that an agency has a policy or practice of impeding access to records under FOIA. *See Payne*, 837 F.2d at 494–95; *Judicial Watch, Inc. v. U.S. Dep't of Homeland*

*Security*, 895 F.3d 770, 777–79 (D.C. Cir. 2018) (summarizing *Payne*). AMB has made no such claim here.

AMB's final case is *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), but that case does not support its argument. *NLRB* concerned whether FOIA Exemption 5 applied to certain documents. 421 U.S. at 147–48. It did not touch on FOIA remedies. And *NLRB* long predates *CREW* and its controlling holding that courts cannot order agencies to post documents to their electronic reading rooms. None of the key cases that AMB relies on supports its argument, and the Court should deny its request for an injunction.

**III.    <u>Plaintiff Is Not Entitled To Fees</u>**

**A.    Plaintiff Has Not Met Its Burden Of Demonstration That It Is Entitled To Fees Under Any Circumstances**

FOIA's attorney's fees and costs provision provides that a district court "may" award "reasonable" fees and costs if a "complainant has substantially prevailed." 5 U.S.C. §552(a)(4)(E)(i).  To obtain attorneys' fees under FOIA, a plaintiff must satisfy two requirements. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).  First, he must be eligible for fees, which requires that he "substantially prevail" as defined by 5 U.S.C. § 552(a)(4)(E)(ii). Second, an eligible plaintiff must demonstrate that he is entitled to fees. See *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995).

That a plaintiff has "substantially prevailed" is demonstrated by obtaining relief either through "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. §552(a)(4)(E)(ii). As explained below, it is a plaintiff's burden to show that "it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Pub. Citizen Health Research Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)

(emphasis added). There is no presumption in favor of awarding fees to litigants that ultimately receive documents. *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 713-14 (D.C. Cir. 1977).

The traditional concept of "but for" causation applies. *Id*. Mere correlation is insufficient to establish causation. *Pub. Law Educ. Inst. v. U.S. Dep't of Justice ("PLEI")*, 744 F.2d 181, 183 (D.C. Cir. 1984) ("more than post hoc, ergo propter hoc must be shown"). For instance, "the mere filing of a complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984). "[T]iming, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law." *PLEI*, 744 F.2d at184 n.5. Thus, if "unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit." *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979).

Accordingly, the Court is called upon to determine "whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed…. The [district] court must determine the cause of the delay," which may arise from "both the plethora of Freedom of Information Act cases pending before federal agencies at any given time, and the time-consuming nature of the search and decision process." *Id*. Thus, the Court must consider additional possible causes of delay, like "the voluminous nature of the request, the limited resources of the Department, and the tremendous FOIA backlog faced at that time." *Weisberg*, 745 F.2d at 1497.

"It is the plaintiff's burden to present evidence establishing a direct causal nexus in order to be eligible for attorney's fees under the FOIA." *Pyramid Lake Paiute Tribe of Indians v. U.S.*

*DOJ*, 750 F.2d 117, 121 (D.C. Cir. 1984). A plaintiff must show that it is more probable than not both [1] that the suit was "necessary to obtain the information… and [2] that a causal nexus exists between that action and the agency's surrender of the information." *Cox*, 601 F.2d at 6. "The burden falls on the party seeking the fee award to persuade the court that both elements of this standard are satisfied where no court judgment ordering release exists." *Sweatt v. U.S. Navy*, 683 F.2d 420, 424 (D.C. Cir. 1982). "The critical question is whether the court suit 'actually provoked' the release of the documents." *Id*. (quoting *Cox*, 601 F.2d at 7). Just because a FOIA plaintiff may have "'won a battle or two'" in the litigation below does not mean that it substantially prevailed. *Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1273 (D.C. Cir. 1988) (citation omitted). Nor is the "sheer volume of release" of records released after the complaint's filing determinative. *Union of Concerned Scientists v. U.S. Nuclear Reg. Comm'n*, 824 F.2d 1219, 1226 (D.C. Cir. 1987).

Importantly, if notwithstanding the lawsuit "the release was in reality pursuant to the administrative request," a plaintiff has not substantially prevailed. *Weisberg*, 745 F.2d at 1497. Even employing a typical litigation tool, like a stipulation, to govern the manner and timing of an agency production may not demonstrate success, for the "causal nexus" for such an agreement or stipulation might "best [be] traced to the Department's administrative processing." *Weisberg*, 848 F.2d at 1270 (emphasis in original).

As explained in the Second Matos Declaration, this litigation was not the but-for cause of HUD's release of records responsive to Plaintiff's request and any delays in production were caused by a combination of the volume of records sought and the Covid-19 pandemic. *See* 2d Matos Decl. In early 2020, Ms. Matos was contacted by the HUD FOIA Branch about a FOIA request (assigned control number 20-FI-HQ-926) made by Mr. Brian Serafin for OHA's opinions and orders, and she then began electronically searching for them. 2d Matos Decl. ¶ 4. On March

20, 2020, Matos advised the FOIA Branch that her office would need to review 2,000 cases and, given the scope of the request, accounting for the disruptions and added burdens resulting from workplace changes due to the then-recently declared COVID-19 pandemic, Matos expected the search, review, and compilation of responsive records to take some time.  2d Matos Decl. ¶ 5.  On June 23, 2020, Matos further updated the HUD FOIA Branch that, while her office had already made progress, the request involved over 10 years of data, so she anticipated needing additional time to finish searching for, reviewing, and compiling the documents.[6]  2d Matos Decl. ¶ 6.  On or about June 17, 2020, AMB filed its lawsuit in this Court.  ECF No. 1.

It took multiple steps to prepare each opinion and order for production to AMB. 2d Matos Decl. ¶ 7.  First, Matos had to search HUD's electronic records in each case that had become final or closed, and locate the final opinion and order for each such case. *Id.*  Next, Matos copied each opinion and order to a compilation folder and started reviewing each for personally identifiable information.  *Id.*  All of Matos's work in responding to this FOIA request had to be done on top of her normal daily workday duties, so she was not able to search for and process responsive documents for production every day. 2d Matos Decl. ¶ 8.  As a result, although Matos worked steadily, it would be difficult for her to estimate how many total documents she processed from when Mr. Serafin submitted his initial FOIA request (March 2020) to when AMB brought this suit (June 2020).  *Id.*  However, Matos estimates that she processed "a significant number" of documents in the months leading up to the lawsuit.[7]

---

[6]    Because OHA has not been in the office since March 2020 due to the COVID-19 pandemic, Matos and her team have not been able to search for opinions and orders that exist only in hard copy files in the OHA office.  2d Matos Decl. ¶ 4.

[7]    In July 2020,  Mr. Serafin made a second FOIA request (No. 20-FI-HQ-01555) on behalf of AMB. Other than the fact that Mr. Serafin now sought the records on behalf of AMB rather than

Plaintiff has not shown that it is more probable than not *both* that the suit was "necessary to obtain the information… and that a causal nexus exists between that action and the agency's surrender of the information." *Cox*, 601 F.2d at 6.   The Second Matos Declaration clearly demonstrates that HUD began processing Mr. Serafin's request for HUD's final opinions and orders when it first came in and fully intended to produce responsive records to him prior to the initiation of AMB's lawsuit.   *See generally*, 2d Matos Decl.   It is Plaintiff's burden to demonstrate that it is entitled to fees and its arguments are unavailing.

First, Plaintiff is incorrect that "HUD made a voluntary and unilateral change in its position once it recognized that it would not be able to dismiss AMB's claim based on its allegation that the request from one of AMB's attorney could not support AMB's claim." Pl's Br. at 9.   As explained in the Second Matos Declaration, as well as in HUD's motion to dismiss the original complaint, FOIA Request No. 20-FI-HQ-00926—which was submitted on March 4, 2020 and was the subject of Count II of the FAC —was made by Brian Serafin in the first person singular, without any indication that it was being filed on behalf of AMB.   1st Matos Decl. ¶¶ 9-10; 2d Matos Decl. ¶ 4; ECF No. 1-2.   It was not until after Plaintiff initiated this civil action that, in July 2020, Mr. Serafin made a second FOIA request (No. 20-FI-HQ-01555) on behalf of AMB.   ECF No. 13-6.   As a result, AMB did not have standing to bring a claim based on Request No. 20-FI-HQ-00926 when Plaintiff filed its original complaint.

A plaintiff will only have standing to bring a challenge for a FOIA request made by its attorney (or other party) where the attorney (or other party) clearly indicates that the request is being made on behalf of the plaintiff.   *Smallwood v. United States DOJ*, 266 F. Supp. 3d 217, 220

---

on his own, Matos determined that the second request  was substantively the same as the prior one (No. 20-FI-HQ-00926) and treated them as the same request for response.  1st Matos Decl. ¶ 10.

(D.D.C. 2017).  Such a plaintiff lacks standing because, under FOIA, "'[t]he requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive.'" *Smallwood*, 266 F. Supp. 3d. at 220 (quoting *Zivotofsky ex rel. Ari. Z. v. Sec'y of State*, 444 F.3d 614, 617, 370 U.S. App. D.C. 269 (D.C. Cir. 2006)) (emphasis added). "Accordingly, if a party has not made a request within the meaning of FOIA, then he does not have standing to bring a lawsuit." *Id*. (internal quotations omitted). While "an attorney may make a FOIA request on behalf of a client, . . . the attorney must clearly indicate that it is being made on behalf of the [client] to give that [client] standing to bring a FOIA challenge." *Smallwood*, 266 F. Supp. 3d. at 220 (internal quotations omitted). Therefore, "courts routinely dismiss FOIA suits where an attorney filed the initial request without indicating that the request was made on behalf of the plaintiff. *Id*. (collecting cases).

Given the failure of Plaintiff's attorney to properly make a FOIA request on its behalf, HUD was within its rights to move to dismiss a complaint which Plaintiff had no standing to bring. *See* ECF No. 11.  It is not a unilateral change in positions to decide not to move to dismiss an amended complaint that was filed after the plaintiff has taken steps to obtain standing to sue. Plaintiff can point to no other evidence supporting the position that it substantially prevailed on any issue—particularly in light of evidence presented in the Second Matos Declaration that Defendant was in the process of compiling and reviewing records that would be responsive to the FOIA request for HUD's final opinions.

In its Opposition, Plaintiff focuses primarily on the "entitlement" prong of the fee analysis, having made conclusory arguments that it is eligible for fees. Pl's Br. at 9-13.[8]  In addition to the

---

[8]    In support of its position that it satisfies the test for receiving fees, Plaintiff cites to the discussion of fees in *Davy v. CIA ("Davy II")*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) but does not

fact that Plaintiff has not demonstrated by a preponderance of the evidence that it is eligible for fees, its entitlement arguments are misplaced. Plaintiff focuses most of its argument regarding the purported "public benefit" of its request on the fact that HUD has been placing its decisions in the electronic reading room during the course of this litigation. *See* Pl's Br. at 10-11. As explained in Defendant's Opening Brief, Plaintiff (a) lacks standing to sue to enforce FOIA's electronic reading room provision and (b) has not stated a claim under the provision because Plaintiff did not exhaust its remedies prior to filing this suit by requesting that HUD post online the opinions and orders that it otherwise requested in its FOIA request. Def's Open. Br. at 6-8. Moreover, in this Circuit, courts do not have the power to compel agencies to post records in the electronic reading room. *Id.* at 8-9 (citing *Citizens for Responsibility & Ethics in v. United States DOJ ("CREW")*, 846 F.3d 1235 (D.C. Cir. 2017)). Plaintiff has not demonstrated that the production of HUD's decisions and opinions to AMB itself as any public benefit.[9]

In addition, Plaintiff erroneously asserts that HUD withheld responsive information from it. Pl's Br. at 11-12. As explained in Defendant's Opening Brief and Fact Statement, to date, HUD has produced all responsive electronic documents to Plaintiff without redactions. Def's Open. Br. at 9-10. HUD's delayed production in light of the scope of Plaintiff's request and the global coronavirus pandemic is not the equivalent of affirmatively withholding information

---

address the fact that the plaintiff in that case had already been found eligible for fees. *See* Pl's Br. at 10 (citing *Davy II*). In fact, in a prior decision in the litigation, the D.C. Circuit found that Davy was eligible to attorney fees under 5 U.S.C. § 552(a)(4)(E) because he had "substantially prevailed" in his FOIA action but "[t]hat [wa]s not the end of the matter . . . because the court must then consider whether he is 'entitled' to attorney fees." *Davy v. C.I.A. ("Davy I")*, 456 F.3d 162, 166 (D.C. Cir. 2006) (citing *Edmonds v. FBI*, 417 F.3d 1319, 1327 (D.C.Cir.2005)).

[9]    Similarly, Plaintiff's suggestion that its interest in the records it requested is purely altruistic and that it is not deriving any benefit from the production is undercut by Plaintiff's repeated reference to other litigation in which it required HUD's administrative decisions. Pl's Br. at 6, 11; Pl's SMF ¶¶ 9-10.

responsive to a properly submitted FOIA request and is not the focus of the fourth factor in a court's inquiry as to entitlement to fees under FOIA.

**B.     Plaintiff Is Not Entitled To Interim Fees**

Because HUD cannot review responsive records stored in hard-copy until workers return to the office following the Covid-19 protocols that have been in place since March 2020, it is Defendant's position that it is premature to discuss whether Plaintiff is entitled to a fee award.  To the extent that Plaintiff's motion can be construed as seeking interim fees, it should be denied.

Interim fees are available under the FOIA pursuant to 5 U.S.C.A. § 552(a)(4)(E), but courts have consistently emphasized that they are disfavored in all but the most exceptional circumstances.  See *Allen v. FBI*, 716 F. Supp. 667, 669-72 (D.D.C. 1989) (recognizing that although courts may order payment of interim fees, it should be done only in limited circumstances).  Their rationale is that litigating interim fees is burdensome and inefficient, and it delays resolution of the merits.  *See Biberman v. FBI*, 496 F. Supp. 263, 265 (S.D.N.Y. 1980) (A final award "on one motion at the conclusion of the action would more efficiently decide the question than periodic interim decisions."); *Allen*, 716 F. Supp. 667, 672 ("The Court does not suggest that interim fees should be granted in every FOIA case.  To the contrary, such practice should be dissuaded").  For these reasons, the law is settled that interim fee awards should be granted "only in unusual instances of protracted litigation and financial hardship." *Allen*, 716 F. Supp. at 672.

Courts consider four questions when determining the appropriateness of interim fees:

First, the court should consider the degree of hardship which delaying a fee award until the litigation is finally concluded would work on plaintiff and his or her counsel.... Second, the court should consider whether there is unreasonable delay on the government's part.... Third, the court should consider the length of time the case has been pending prior to the motion, and fourth, the period of time likely to be required before the litigation is concluded.

*Id*. at 699-72.  Each factor counsels against an interim fee award here.

First, Plaintiff has presented no evidence demonstrating an unusual hardship that justifies interim fees.  Second, there has been no unreasonable delay in this case.  As explained in the Second Matos Declaration, HUD began compiling responsive records soon after Mr. Serafin's original request came in (prior to the filing of the original complaint in this action) and, over the course of approximately a year (which coincided with the height of the Covid-19 pandemic), HUD has produced all electronically available responsive records.  2d Matos Decl. ¶ 4; Def's Open. Br. at 9-10.  Moreover, HUD intends to collect and process the hard copy records when employees return to the office.  2d Matos Decl. ¶¶ 4, 9.  This is not unreasonable delay, even before one considers that Mr. Serafin's original FOIA request was not formally submitted on AMB's behalf and that a proper request on AMB's behalf was not submitted until after the original complaint in this case was filed.

This case has been pending for less than two years—well short of the threshold for awarding interim fees.  For example, in *Allen*, the court found that "[a]n award of interim fees … is premature, even though seven years have elapsed since the initial filing of this action."  *Allen*, 716 F. Supp. at 672.  Finally, though it is not currently clear when HUD will be able to process the hard copy records and this case will conclude, it seems likely that the current summary judgment briefing will resolve certain outstanding legal issues and the only remaining issue will be the production of hard copy records.

In sum, in addition to the fact that it is premature for determination of Plaintiff's eligibility and entitlement for attorney's fees and costs, it is clear that Plaintiff cannot demonstrate entitlement to interim fees.

## CONCLUSION

For all the reasons set forth above and in the accompanying declarations, Defendant respectfully asks the Court to deny Plaintiff's motion for summary judgment, grant HUD's motion for partial summary judgment and judgment on the pleadings, and dismiss Counts III and V of AMB's FAC.

*   *   *

Dated: March 24, 2022            Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


/s/ *Sian Jones*
SIAN JONES, D.C. Bar No. 1024062
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2578
Sian.Jones@usdoj.gov

*Counsel for United States*