UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATED MORTGAGE BANKERS, INC., | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civ. A. No. 20-1601 (CJN) |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) | |
| *Defendants.* | ) ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

Table of Authorities ......................................................................**Error! Bookmark not defined.**

Introduction ............................................................................................................................ 1

Argument ............................................................................................................................... 2

    I.    HUD Is Not Liable on Counts 3 or 4 Because Production Is Ongoing ........................... 2

    II.    HUD Is Entitled to Judgment in Its Favor Because AMB Has Not Brought—and Cannot Bring—a Policy-or-Practice Claim ................................................................................. 3

    III.    AMB's FOIA Request Claims (Counts 3 and 4) Do Not Entitle It to Injunctive Relief . 5

        A.    HUD's Production Will Moot Counts 3 and 4, Which Do Not Support AMB's Request for Prospective Relief ............................................................................................. 6

        B.    AMB's Remaining Arguments for Prospective Relief Under Counts 3 and 4 Lack Merit 8

    IV.    No Relief Is Warranted Under Count 5 Because AMB Lacks Standing and Failed to Exhaust, and Because Precedent Bars the Relief Sought ................................................. 8

        A.    AMB Lacks Standing on Its Reading Room Claim (Count 5) ..................................... 9

        B.    AMB Was Required to Exhaust Administrative Remedies ........................................ 10

        C.    *CREW* Establishes that Injunctive Relief Is Not Available Here ............................... 12

Conclusion ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Citizens for Responsibility & Ethics in Washington v. Dep't of Just.*,
  846 F.3d 1235 (D.C. Cir. 2017) ................................................................................. 8, 10, 13

*Citizens for Responsibility & Ethics in Washington v. Dep't of Just.*,
  922 F.3d 480 (D.C. Cir. 2019) ................................................................................. 10-11, 13

*Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*,
  874 F.3d 287–93 (D.C. Cir. 2017) ................................................................................. 4, 7

*Freedom Watch v. BLM*,
  Civ. A. No. 16-2320, 2017 U.S. Dist. LEXIS 73458 (D.D.C. May 15, 2017) ........................ 2

*Hidalgo v. FBI*,
  344 F.3d 1256 (D.C. Cir. 2003) ................................................................................. 12

*Irons v. Schulyer*,
  465 F.2d 608 (D.C. Cir. 1972) ................................................................................. 10

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
  895 F.3d 770–78 (D.C. Cir. 2018) ................................................................................. 4

*Khine v. DHS*,
  943 F.3d 959 (D.C. Cir. 2019) ................................................................................. 4, 5

*N.Y. Legal Assistance Grp.*,
  987 F.3d ................................................................................. 13

*Payne Enters. v. United States*,
  837 F.2d 486–91 (D.C. Cir. 1988) ................................................................................. 3, 8

*Rae v. United States*,
  530 F. Supp. 2d 127 (D.D.C. 2008) ................................................................................. 11

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
  402 U.S. 1 (1971) ................................................................................. 7

*Texas v. EPA*,
  726 F.3d 180 (D.C. Cir. 2013) ................................................................................. 5

*Thompson v. DEA*,
  492 F.3d 428 (D.C. Cir. 2007) ................................................................................. 11

*Williams & Connolly v. SEC,*

    662 F.3d 1240 (D.C. Cir. 2011) ........................................................... 3, 6, 7

**Statutes and Regulations**

5 U.S.C. § 552 .................................................................................. 5, 7, 10, 12

5 U.S.C. § 704 ................................................................................................ 12

24 C.F.R. § 15.101 ....................................................................................... 5, 6

24 CFR § 15.1 ................................................................................................... 5

24 CFR § 15.101 ............................................................................................... 5

Defendant, U.S. Department of Housing and Urban Development ("Defendant" or "HUD"), respectfully submits this reply in support of its Motion for Partial Summary Judgment and Judgment on the Pleadings (ECF No. 28, "Defendant's Motion").[1]

## **INTRODUCTION**

This is a simple Freedom of Information Act ("FOIA") case. Associated Mortgage Bankers, Inc. ("AMB") submitted a large FOIA request in 2020.[2] HUD quickly began its search and collection of responsive documents. When HUD did not produce documents within the twenty-day statutory period, AMB sued. HUD is near completion of producing responsive documents. When HUD finishes, there will be nothing left for HUD or the Court to do with respect to AMB's FOIA request.

AMB, however, is attempting to muddy the waters. Its Opposition to HUD's Motion repeatedly references alleged failures by HUD to publish opinions and orders in its electronic

---

[1]    On March 1, 2022, Defendant also filed a Memorandum of Law in support of its Motion (ECF No. 28-1, "Defendant's Opening Brief"), Statement of Material Facts Not in Genuine Dispute (ECF No. 28-2, "Defendant's Fact Statement" or "Def's SMF"), and Declarations of Deborah R. Snowden (ECF No. 28-3, "Snowden Decl."), Matthew C. Forman (ECF No. 28-6, "Forman Decl."), Cinthia Matos (ECF No. 28-7, "First Matos Decl."), Mark G. Borum (ECF No. 28-9, "Borum Decl."), Mark D. Lansing (ECF No. 28-10, "Lansing Decl."), and Lindsey Allen (ECF No. 28-8, "Allen Decl."), all of which Defendant incorporates herein by reference. On March 24, 2022, Plaintiff Associated Mortgage Bankers, Inc. ("Plaintiff" or "AMB") submitted its Memorandum in Opposition to Defendant's Motion (ECF No. 31, "Plaintiff's Opposition").

On March 1, 2022, Plaintiff also submitted a Motion for Summary Judgment (ECF No. 29, "Plaintiff's Motion"), a Memorandum of Law in support thereof (ECF No. 29-1, "Plaintiff's Opening Brief"), and Statement of Undisputed Facts (ECF No. 29-2, "Plaintiff's Fact Statement"). On March 24, 2022, Defendant filed its Opposition to Plaintiff's Motion (ECF No. 30, "Defendant's Opposition"), Second Declaration of Cinthia Matos (ECF No. 30-2, "Second Matos Decl."), its Response to Plaintiff's Fact Statement (ECF No. 30-3), and a supplement to Defendant's Fact Statement (ECF No. 30-1).

[2]    Around the same time, an identical FOIA request was also submitted by an individual, Brian Serafin, but not on AMB's behalf.

reading room. But nowhere does AMB claim that HUD has a policy or practice against publication. Instead, AMB tries to connect its straightforward FOIA claims to HUD"s alleged failure to publish its administrative opinions and decisions. However, AMB cannot bridge the gap between these distinct claims. AMB cannot obtain an injunction ordering HUD to keep the reading room up to date because such relief would be unwarranted in law and in fact. And regardless, HUD is already publishing opinions and orders to its reading room. Finally, HUD is still producing documents to AMB in response to its FOIA request. When production is complete, this case will become moot. The Court should grant HUD's Motion.

## **ARGUMENT**

### I.    **HUD Is Not Liable on Counts 3 or 4 Because Production Is Ongoing**

Counts 3 and 4 of AMB's First Amended Complaint (ECF No. 13, "FAC") relate to two identical requests for ten years' worth of final decisions and orders in the adjudication of cases, one request made by Brian Serafin individually and one made by Mr. Serafin on behalf of AMB. FAC ¶¶ 57, 65; Def's SMF ¶¶ 2, 5. AMB asserts that HUD is liable under Counts 3 and 4 because it did not start producing responsive documents until October 2020, and production remains incomplete. Pl's Opp. at 2–3. But as described in previous filings, HUD had legitimate reasons for its delay. Def's Open. Br. at 9-10; Def's Opp. at 10-11, 16. HUD did not begin producing documents until October 2020 because of the sheer volume of requested records and the COVID-19 pandemic. *See* 2d Matos Decl. To the extent that production remains incomplete it is because, due to the pandemic, HUD staff have not yet returned to the office to access and process hard-copy opinions and orders. *See id.*

Once a FOIA plaintiff sues, "the district court exercises supervision over the agency's review and production of responsive materials." *Freedom Watch v. BLM*, Civ. A. No. 16-2320, 2017 U.S. Dist. LEXIS 73458, at *7-8 (D.D.C. May 15, 2017). That is exactly what the Court has

been doing. And it "is, of course, true that, 'however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform' with respect to the particular records that were requested." *Payne Enters. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988) (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)); *see also Williams & Connolly v. SEC*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) ("Once the documents are released to the requesting party, there is no longer any case or controversy."). HUD is completing—and the Court is overseeing—production of records that respond to the FOIA requests in Counts 3 and 4. *See* ECF Nos. 17–25, 27 (joint status reports). And once HUD finishes production, there is nothing more for the Court to do regarding production of records. The Court should thus deny AMB's request to find HUD liable under Counts 3 and 4. As previously explained, Count 3 should be dismissed now because the underlying FOIA request was not submitted by or on behalf of AMB. Def's Open. Br. at 10 n.6; HUD Mem. in Supp. Mot. to Dismiss (ECF No. 11-1) at 5–6. However, even if Count 3 is not dismissed on the basis of standing, HUD respectfully submits that the Court should wait until HUD completes production and then dismiss both Counts 3 and 4 because they seek the same documents that will have been produced.

## II.     HUD Is Entitled to Judgment in Its Favor Because AMB Has Not Brought—and Cannot Bring—a Policy-or-Practice Claim

As explained in Defendant's Opening Brief, prospective relief is not available to AMB under the facts in this case.  *See* Def's Open. Br. at 5-6, 8-10.  AMB contends, however, that the Court can issue prospective relief because HUD has not regularly published opinions and orders to its electronic reading room. Pl's Opp. at 3–5. But this argument is flawed for two reasons: AMB has not brought the correct type of claim for prospective relief, and it would lack standing to bring such a claim.

- 3 -

In the D.C. Circuit, "it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018). But AMB has not brought a policy-or-practice claim. Counts 3 and 4 are simple FOIA claims for failing to locate and produce responsive records. *See* FAC ¶¶ 56–71. Count 5, meanwhile, alleges only that HUD has not followed its duty to publish opinions and orders to the reading room because the collection of opinions and orders posted on HUD's website is incomplete. *Id.* ¶¶ 21, 72. Nowhere does the FAC claim that HUD has a policy or practice of not publishing its opinions and orders. It is well-established that policy-or-practice claims are the only FOIA claims eligible for injunctive relief. *See Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 874 F.3d 287, 291–93 (D.C. Cir. 2017) (reversing district court order granting prospective FOIA relief because court had not found that agency was acting per policy or practice). Because AMB did not make such a claim, it cannot obtain an order requiring that HUD publish its opinions and orders in the reading room.

Even if AMB had brought a policy-or-practice claim, it would lack standing. "[O]nly repeat requesters who 'will suffer continuing injury' have standing to bring such claims." *Khine v. DHS*, 943 F.3d 959, 965 (D.C. Cir. 2019) (quoting *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). But AMB does not allege it is a repeat requester. In fact, AMB alleges only that it filed one FOIA request, twice (once by Brian Serafin individually, and once by Mr. Serafin on AMB's behalf). Moreover, HUD has been posting opinions and orders online as they have been produced to AMB. *See* First Matos Decl. ¶ 15; Allen Decl. ¶ 16.[3]  AMB

---

[3]    *See also* U.S. Dep't Hous. & Urban Dev., FOIA Reading Room, https://www.hud.gov/ program_offices/administration/foia/readingroom (last visited Apr. 13, 2022).

is thus "not likely to be subject again to the agency practice [it] seeks to challenge." *Khine,* 943 F.3d at 965. As such, AMB would lack standing to bring a policy-or-practice claim.[4]

Last, AMB argues that HUD's emphasis on 5 U.S.C. § 552(a)(4)(B) is flawed because it neglects AMB's reliance on 24 CFR § 15.101(b)(1). Pl's Opp. at 3. But this argument ignores the relationship between FOIA and Section 15.101. FOIA does not empower courts to order agencies to publish items in their reading rooms. Def's Opp. at 5–8. And Section 15.101(b)(1) is among the HUD regulations that implement FOIA. *See* 24 CFR § 15.1(b). Section 15.101(b) thus cannot extend beyond FOIA and permit prospective reading-room relief for simple FOIA claims. *See Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013) (recognizing that a "valid statute always prevails over a conflicting regulation"). Because FOIA would not allow the Court to grant the injunction that AMB seeks, neither does 24 C.F.R. § 15.101(b)(1).

## III.    AMB's FOIA Request Claims (Counts 3 and 4) Do Not Entitle It to Injunctive Relief

Next, AMB erroneously asserts that its FOIA request claims (Counts 3 and 4) entitle it to an injunction requiring HUD to publish or produce to it all future opinions and orders. Pl's Opp. at 5. Plaintiff's position is not supported by law. AMB's only claim potentially implicating its right to access future opinions and orders is Count 5, which alleges that HUD must publish all opinions and orders online but had not done so. To be clear, AMB's FOIA request claims are based on its rights to the production of requested records and, therefore, cannot be interchanged with its reading-room claim (Count 5), which is based on HUD's duty to make certain records publicly

---

[4]    It does not matter whether AMB's attorney, Brian Serafin, could be considered a repeat requester. Though HUD's position remains that the requests submitted by Mr. Serafin on his own behalf are not properly the subject of this litigation, AMB has emphasized repeatedly that the FOIA requester here was AMB alone. Either way, "[b]ecause only an entity that has filed a FOIA request (and will do so again in the future) may bring a policy-or-practice claim," AMB cannot rely on any FOIA requests that its attorney has filed or will file. *Khine*, 943 F.3d at 966.

available online. Contrary to AMB's argument, Pl's Opp. at 7–8, the Count 5 (reading room) claim cannot change the fact that AMB's FOIA request claims will be moot when HUD completes production of the requested records. And AMB's standing to bring its FOIA request claims does not, as AMB argues (*id.* at 5–7), create standing for a prospective injunction to publish, or produce to it, all future agency records of the type requested. *See infra* § III.A.  Nor do AMB's other arguments couched under Counts 3 and 4 support its entitlement to injunctive relief.  *See infra* § III.B.

### A.    HUD's Production Will Moot Counts 3 and 4, Which Do Not Support AMB's Request for Prospective Relief

AMB argues that complete production of the FOIA requests at issue in Counts 3 and 4 will not moot those claims and those FOIA requests they create standing for prospective injunctive relief in the form of an order to publish, or produce to AMB, all future opinions and orders on a going forward basis. Pl's Opp. at 5–10. The arguments, however, mischaracterizes the FAC. Counts 3 and 4 are simple FOIA claims for failure to search for and turn over responsive records. FAC ¶¶ 56–71 (alleging that HUD did not produce all agency opinions and orders in the adjudication of cases from January 2010 through July 2020 within twenty working days of two nearly identical FOIA requests). HUD has never taken any action to deny production of the requested records, but instead began the process for production soon after the requests were made and has produced all responsive documents that are currently accessible. *See* 2d Matos Decl.; Def's SMF ¶ 23. Once HUD has completed production, "there is no longer any case or controversy." *Williams & Connolly*, 662 F.3d at 1243. Thus, even setting aside Defendant's argument that Count 3 should be dismissed because the FOIA request at issue was not made by or on behalf of AMB, (*see* Def's Open. Br. at 10 n.6), both Counts 3 and 4 will be moot once HUD completes its

production of hard-copy documents that are currently inaccessible (*see id.* at 2, 10; *see also* SMF ¶¶ 18, 19).

Similarly, while AMB may have standing to bring Counts 3 and 4, those claims do not create standing for the prospective relief AMB seeks. Prospective relief is part of the court's equitable powers. *Ctr. for Study of Servs.*, 874 F.3d at 291. "As with any equity case, the nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971); *accord Ctr. for Study of Servs.*, 874 F.3d at 293 (Randolph, J., concurring). However, the FOIA requests in issue in Counts 3 and 4 lack any connection to prospective relief. The FOIA request in Count 3 (made by Brian Serafin, individually) sought all of HUD's opinions and orders from January 1, 2010, to March 4, 2020. ECF No. 13-4 (FAC, Ex. D). The FOIA request in Count 4 (made on AMB's behalf) sought the same records through the end date of July 16, 2020. ECF No. 13-5 (FAC, Ex. E). These requests did not ask for ongoing production as future opinions and orders become available. There is nothing prospective at all about the Count 3 and 4 FOIA requests. And AMB's allegations with respect to those FOIA requests allege only that HUD did not produce all the requested documents within twenty working days, per 5 U.S.C. § 552(a)(6)(A)(i). FAC ¶¶ 58, 66. Prospective relief for these counts would thus have no relation to the claimed violation and is unwarranted.

AMB attempts to confuse what is at issue in Counts 3 and 4 by citing its request for prospective relief in paragraph 75(e) of the FAC. Pl's Opp. at 7 (citing FAC ¶ 75(e)). But that request for relief is distinct from the relief requested in relation to the FOIA requests in Counts 3 and 4. With respect to "the [FOIA] Requests," AMB sought an order that HUD search for and produce responsive records. FAC ¶ 75(c)–(d). By contrast, the relief AMB requested in paragraph 75(e), to "Order HUD on a going forward basis to automatically make all of its final

opinions and orders available online without any further affirmative FOIA request, as required by law, or else to order HUD on a going forward basis to automatically provide all of its final opinions and orders to AMB without any further affirmative request by AMB," can only relate to AMB's Count 5, which is not based on any FOIA request to HUD. *See supra* § IV.  AMB's FOIA request claims (Counts 3 and 4) thus do not cure the deficiencies of its reading-room claim (Count 5) and do not form the basis for prospective relief.

## B.    AMB's Remaining Arguments for Prospective Relief Under Counts 3 and 4 Lack Merit

AMB also improperly relies on *Citizens for Responsibility & Ethics in Washington* ("*CREW*") *v. Dep't of Just.*, 846 F.3d 1235, 1243 (D.C. Cir. 2017), to claim that it is entitled to prospective relief in the context of its discussion of Counts 3 and 4.  As explained in Defendant's prior filings, this argument cherry-picks quotes from *CREW* and ignores the decision as a whole. *See* Def's Opp. at 5–8. While AMB may have standing to bring Counts 3 and 4, it cannot obtain the requested prospective relief for those counts. *Id.*

While AMB again quotes *Payne* in support of its argument that it is entitled to prospective relief, Pl's Opp. at 8–9, that case does not apply here. In *Payne*, the plaintiff claimed that the Air Force had a policy or practice of impeding disclosure to the *plaintiff. Payne*, 837 F.2d at 490. Here, by contrast, AMB claims that HUD has not disclosed its opinions and orders to the *public* (and as explained above, there is no allegation that HUD had a policy of withholding records). *CREW*, however, established that courts cannot order prospective relief in FOIA cases merely for public benefit. *CREW*, 846 F.3d at 1243; Def's Opp. at 7. *Payne* is thus irrelevant here.

## IV.    No Relief Is Warranted Under Count 5 Because AMB Lacks Standing and Failed to Exhaust, and Because Precedent Bars the Relief Sought

Finally, AMB is not entitled to any relief under Count 5. Count 5 seeks an injunction requiring HUD to keep its reading room up to date going forward. As HUD has previously

explained, there is neither liability nor relief available under AMB's reading-room claim (Count 5) because AMB lacks standing, AMB did not exhaust administrative remedies, and the Court lacks authority to order anything other than production of reading-room records to the plaintiff, which HUD is already doing. Def's Open. Br. at 5-9; Def's Opp. at 5–8. In its response to HUD's Motion, AMB again misconstrues *CREW* and its subsequent history, and does not otherwise present any meaningful rebuttal to HUD's arguments.

### A.    AMB Lacks Standing on Its Reading Room Claim (Count 5)

As HUD has explained, AMB lacks standing for the prospective relief it seeks under the reading claim (Count 5) because it alleges only past harm and no other facts showing a realistic threat of a future HUD enforcement action resulting in an administrative proceeding in which AMB might be harmed by lack of access to relevant administrative decisions and orders. *See* Def's Open. Br. at 5–7.

Apart from AMB's misplaced arguments related to its FOIA request claims (Counts 3 and 4), AMB's only response in support of Count 5 standing is that, in 2020, a court found it to be a lender of HUD-insured mortgages, which AMB contends creates an "interest" in future decisions issued by HUD administrative judges regarding HUD-insured mortgage lenders. Pl's Opp. at 6 (citing Def's Open. Br. at 6 n.5). That is insufficient. Not only do references to AMB's prior non-FOIA litigation fail to show that AMB is currently a HUD-insured mortgage lender—or at risk of any enforcement action that might result in a HUD administrative proceeding—but this line of argument also fails to show that AMB would not have access to relevant decisions and orders in the future. In fact, AMB currently possesses electronically available opinions and orders as requested through July 2020, with the older hard-copy records to be produced imminently. HUD is also posting opinions and orders on an ongoing basis. *See* Def's Open. Br. at 9–10 (citing Def's SMF ¶¶ 13, 14, 18, 19, 23); *see also* FOIA Reading Room, *supra* n.3 (showing final decisions

from October 2020 through December 2021). AMB still has not alleged or shown a realistic threat of future injury to support standing on its reading-room claim for a prospective injunction.

### B.     AMB Was Required to Exhaust Administrative Remedies

AMB argues that it was not required to exhaust administrative remedies because HUD did not meet the twenty-day deadline. Pl's Opp. at 13–16. However, Count 5 has no relation to AMB's FOIA claims. Instead, Count 5 is a standalone claim for failing to publish opinions and orders in the reading room. And to bring such a claim, AMB would have had to make a request to HUD under 5 U.S.C. § 552(a)(2) before suing. *See* Def's Open. Br. at 5-6.   As the D.C. Circuit has concluded, "the opinions and orders referred to in Section 552(a)(2), *when properly requested*, are required to be made available, and that . . . requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency failed to make them available as required by Section 552(a)(2)." *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) (supp. op. on pet. for reh'g) (emphasis added), *quoted in CREW*, 846 F.3d at 1240–41.

AMB, however, did not request that HUD publish its opinions and orders in its electronic reading room. At most, AMB noted in a FOIA request that HUD was supposed to be following the reading-room provision. FAC, Ex. D at 6; ECF No. 13-6 at 6 (FAC, Ex. F).[5] Yet AMB's request sought only "documents from the last 10 years." FAC Ex. D at 6; FAC Ex. F at 6. This request— disclosure to AMB with a definitive end date in the past—is far from a request that HUD follow the reading-room provision for the public in the future. *See CREW v. Dep't of Just.*, 922 F.3d 480, 485 (D.C. Cir. 2019) ("*CREW II*") (noting that CREW requested "that the OLC disclose *all* of its

---

[5]      FAC Exhibit D corresponds to FOIA Request No. 20-FI-HQ-926, and FAC Exhibit F to Request No. 20-FI-HQ-1555. But the latter was identical to the former except in two ways: AMB's attorney made clear that the request was on AMB's behalf, and the search end date was extended from March to July 2020. Def's Opp. at 2–3. So, substantively, AMB raised the reading-room issue in only one prior FOIA request.

formal written opinions and accompanying indices under FOIA's reading-room provision" (emphasis added)). In fact, Brian Serafin submitted AMB's FOIA request (Request No. 20-FI-HQ-1555) to clarify that he made his previous request on AMB's behalf. FAC, Ex. E at 7. In submitting this later request, however, Serafin did not clarify it to say that he was asking HUD to follow the reading-room provision. Therefore, a plain reading of the requests suggests that AMB mentioned the reading-room provision in its FOIA request simply to explain why it was seeking the requested documents. AMB thus never requested that HUD publish opinions and orders in its electronic reading room. AMB has failed to exhaust administrative remedies for Count 5, and the Court should reject its request for an injunction.

In its Opposition, AMB also asserts that HUD cannot claim exhaustion because it did not raise the issue as an affirmative defense in its answer. Pl's Opp. at 13 n.10. But that is not always true. "Although failure to exhaust administrative remedies is an affirmative defense, '[a] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.'" *Rae v. United States*, 530 F. Supp. 2d 127, 130 (D.D.C. 2008) (alterations in original) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007) ("Further, even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face."). Here, the complaint does not allege that AMB previously asked HUD to publish opinions and orders in its electronic reading room. AMB fails to allege any facts suggesting that it exhausted administrative remedies for Count 5. That failure thus appears on the face of AMB's complaint. HUD can therefore allege that AMB failed to exhaust, and the Court should dismiss Count 5.

AMB tries to rebut this argument by citing *CREW*'s language that a plaintiff may sue under the reading-room provision, "without first making a request for specific records under section 552*(a)(3)*." Pl's Opp. at 14–15 (emphasis added) (quoting *CREW*, 846 F.3d at 1240). But, again, this quotation cherry picks *CREW*. True, AMB did not need to request publication under § 552*(a)(3)*. But as explained above, AMB was required to request publication under Section 552(a)(2) and failed to do so.

Finally, AMB's attempt to distinguish *Hidalgo v. FBI*, 344 F.3d 1256 (D.C. Cir. 2003), misinterprets its reading-room claim and the law. *See* Pl's Opp. at 15.  As discussed above, while HUD must turn over records under Section 552(a)(2) when they are properly requested, AMB made no such request. AMB also misinterprets the law by contending that HUD's position would allow HUD to ignore all FOIA requests and then claim failure to exhaust to stave off litigation. But that it not so. AMB's parade of horribles assumes that HUD can legally ignore proper FOIA requests. It cannot. *See* 5 U.S.C. § 552(a)(6)(A) (requiring agencies to respond to "any request for records made under paragraph (1), (2), or (3) of this subsection"). The problem is that AMB did not submit any FOIA request that HUD keep its reading room up to date. There was thus nothing for HUD to "correct or rethink[,]" *Hidalgo*, 344 F.3d at 1260, and Plaintiff has no reading room claim.

### C.    *CREW* Establishes that Injunctive Relief Is Not Available Here

As HUD has already shown, *CREW* bars the Court from issuing the injunction that AMB seeks because it would benefit the public, not AMB. Def's Opp. at 5–8. AMB attempts to avoid this conclusion by cabining *CREW*'s holding to the facts of that case. Pl's Opp. at 16 n.13. Citing a Second Circuit case, AMB contends that the D.C. Circuit construed *CREW* in *CREW II* "narrowly as turning on the fact that the plaintiff 'improperly brought is claim under the Administrative Procedure Act, 5 U.S.C. § 704, instead of FOIA's judicial-review provision.'" *Id.* (quoting *N.Y.*

*Legal Assistance Grp. v. BIA*, 987 F.3d 207, 213 (2d Cir. 2021) (quoting *CREW II*, 922 F.3d at 485)). This argument, however, misinterprets *CREW II*. The quote's context makes clear that *CREW II* was describing why the district court dismissed the complaint, not why the D.C. Circuit affirmed:

> In July 2013, CREW urged the OLC to make available all of its formal written opinions and indices of those opinions. After the OLC declined, CREW sued the Department of Justice to compel disclosure under the FOIA's reading-room provision. The district court dismissed the complaint because CREW improperly brought its claim under the Administrative Procedure Act, 5 U.S.C. § 704, instead of FOIA's judicial-review provision, 5 U.S.C. § 552(a)(4)(B). We affirmed the dismissal.

*CREW II*, 922 F.3d ate 485 (citations omitted). This passage does not explain why the D.C. Circuit affirmed.

*CREW* makes its own holding clear: "courts lack authority under FOIA to order agencies to 'make [records] available for public inspection,'" and "CREW itself can gain access to all the records it seeks" by bringing another claim. *CREW*, 846 F.3d at 1246 (alteration in original) (quoting 5 U.S.C. § 552(a)(2)). *CREW II*, meanwhile, merely held that the plaintiff had not shown that all the requested documents fell under the reading-room provision as a matter of law. 922 F.3d at 487. *CREW II* thus does not undermine *CREW* in any way, and the Second Circuit's interpretation of it does not control regardless.[6]

---

[6] The dissent in *N.Y. Legal Assistance Group* further supports this reading of *CREW II*. As it notes, the majority's reading of FOIA's judicial-review provision is "(1) not stated expressly in statutory text, (2) inconsistent with the statutory structure, and (3) unsupported by the statutory history." *N.Y. Legal Assistance Grp.*, 987 F.3d at 231 (Park, J., dissenting). Instead, "the only relief available under FOIA's judicial-review provision is the production of agency records to the plaintiff." *Id.* at 225. But that does not leave courts powerless to enforce reading-room provisions. They can still require production to a particular requester, refer matters to the Office of Special Counsel, and bar an agency from relying on undisclosed records. *Id.* at 229. *N.Y. Legal Assistance Group* is both not controlling and not persuasive.

Finally, HUD does not argue that it can ignore FOIA's reading-room provision or its own implementing regulations. But AMB has not established itself or its claims as proper for ordering the prospective relief that it requests. The Court should deny AMB an injunction and allow HUD to finish production to AMB. All the while, HUD will continue to upload opinions and orders to its reading room. *See* FOIA Reading Room, *supra* note 3.

## CONCLUSION

For all the reasons set forth above and in Defendant's prior briefs, Defendant respectfully asks the Court to deny Plaintiff's motion for summary judgment, grant HUD's motion for partial summary judgment and judgment on the pleadings, and dismiss Counts 3 and 5 of AMB's FAC.


Dated: April 18, 2022         Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


/s/ *Sian Jones*
SIAN JONES, D.C. Bar No. 1024062
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2578
Sian.Jones@usdoj.gov

*Counsel for United States*